NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DARREN K. KNOX,** | Civil Action No. 05-2292 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

Agnes S. Wladyka
Abromson & Carey
60 Park Place, Suite 601
Newark, NJ 07102
    *(Attorney for Plaintiff)*

Arthur Swerdloff
Special Assistant U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    *(Attorney for Defendant)*

**MARTINI, District Judge:**

Plaintiff Darren K. Knox brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("Act"), as amended, seeking review of the final determination by the Commissioner of Social Security ("Commissioner") denying his request for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Act, 42 U.S.C. §§ 401-433.  For the reasons articulated below, the Court will **AFFIRM** the Commissioner's decision.

**I.      BACKGROUND**

Plaintiff is currently 41 years old and has a high school education. (Tr. at 20.)[1] Plaintiff formerly worked as a customer service representative, auditor, corrections officer, and paralegal. (*Id.* at 20.) Plaintiff claims he is disabled because since March 2003, he has suffered from chest pain, shortness of breath, fatigue, pneumonia, and an enlarged heart. (*Id.* at 20, 421-422.) On April 1, 2003, Plaintiff applied for both DIB under Title II of the Act, and SSI under Title XVI of the Act. (*Id.* at 19.) Plaintiff's application was denied October 23, 2003 and his application for reconsideration was denied by Administrative Law Judge ("the ALJ") Dean W. Determan on December 4, 2003. (*Id.* at 404.)

In a written decision the ALJ found Plaintiff not disabled and therefore not entitled to DIB or SSI under the Act. The ALJ specifically held that Plaintiff did not suffer from a Listed Impairment in Appendix 1, Subpart P, Regulation No. 4, that Plaintiff's allegations are not entirely credible, no medical evidence supports Plaintiff's subjective assessments of pain, and that although he cannot return to his past relevant work, Plaintiff retains the residual functional capacity for the full range of sedentary work. (*Id.* at 21, 23.) The Appeals Council affirmed the ALJ's decision on April 8, 2005. (*Id.* at 7.) Plaintiff asks this court to reverse or remand the ALJ's decision on the ground that it was not based on substantial evidence.

**II.     STANDARD OF REVIEW**

This Court exercises plenary review over the Commissioner's legal conclusions and is bound by the Commissioner's factual findings if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the

---

[1] The designation "Tr." refers to the administrative record.

record as a whole, a reasonable person might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted); *see also Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988) (stating that substantial evidence is "more than a mere scintilla but may be less than a preponderance.") Thus, this Court's inquiry is whether the record, read in its entirety, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

This Court must accept the decision as binding if it is supported by substantial evidence. *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). It does not matter whether this Court, if acting *de novo,* would have reached a different conclusion. *Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190-91 (3d Cir.1986).

## III. FIVE-STEP DISABILITY DETERMINATION

An ALJ considering a claim for disability benefits must apply a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a). If the claimant is found to be engaged in substantial activity, the disability claim will be denied. *Id.* In step two, the ALJ must next determine whether the claimant is suffering from an impairment or combination of impairments that is "severe." *Id.*; 20 C.F.R. § 404.1520(c). If the claimant cannot show his impairment is "severe," he is ineligible for disability benefits. 20 C.F.R. § 404.1520(a). However, if the claimant demonstrates a "severe" medical impairment, the ALJ must determine in step three whether the impairment meets or equals an impairment listed by the Commissioner as creating a

3

presumption of disability.[2]  20 C.F.R. § 404.1520(d).  If a match is found, the ALJ enters a finding of disability without considering other factors such as age, education, and work experience.  *Id.*  Conversely, if there is no match, the ALJ must proceed to steps four and five.  *Burnett*, 220 F.3d at 118.

In step four, the ALJ must decide if the claimant retains the residual functional capacity to perform past relevant work.  20 C.F.R. § 404.1520(e)-(f).  At this step, the claimant has the burden of demonstrating his or her inability to perform such work.  *Burnett*, 220 F.3d at 118 (citation omitted).  If the claimant does not have the capacity to resume past work, the evaluation will continue to the fifth step.  *Id.*

At the fifth step, the burden shifts to the Commissioner to demonstrate the claimant is capable of performing some other available work in the national economy, taking into consideration the claimant's age, education, past work experience, and residual functional capacity.  20 C.F.R. § 404.1520(g); *Burnett*, 220 F.3d at 118.  If the claimant cannot perform other work in the national economy, the ALJ must grant disability benefits.  20 C.F.R. § 404.1520(g).

In this case, the ALJ determined at step one of the analysis that Plaintiff did not engage in substantial gainful activity during the disability period alleged.  The ALJ moved to step two and considered whether Plaintiff suffered from an impairment or combination of impairments that is "severe."  Here, the ALJ found that Plaintiff's alleged physical impairments were severe.  He based his decision on the diagnoses made by Plaintiff's physicians and on objective medical evidence.  At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal the severity of those included in the Listing of Impairments provided in 20 C.F.R. § 404,

---

[2]The Commissioner's list is located at Appendix 1 to 20 C.F.R. pt. 404, subpt. P.

Subpart, P, Appendix 1.  At step four the ALJ concluded that Plaintiff retains the residual functional capacity to perform a full, wide and significant range of sedentary work.  However, in as much as Plaintiff "lacks the ability to perform more than full range of sedentary work . . . he is unable to perform the requirements of his past relevant work."  (Tr. at 22.)  At the fifth and final step, the ALJ found Plaintiff can perform available work in the national economy.  In challenging the ALJ's decision, Plaintiff argues that the ALJ failed to base his conclusion on substantial evidence.

## IV.  ANALYSIS

Plaintiff does not challenge the ALJ's step one and step two determinations that Plaintiff was both unemployed and suffering from a severe impairment due his cardiac condition.  (Tr. at 20, 21, 100, 419).  Rather, Plaintiff challenges the ALJ's decision on the remaining three steps.  The first is the ALJ's step three assessment that Plaintiff does not have a listed disability.  The second alleges that the ALJ's step four residual functional capacity determination was incorrect.  Finally, Plaintiff challenges the ALJ's step-five ruling that Plaintiff can perform other work in the national economy and, therefore, is not disabled.

### A.  The ALJ's Step Three Determination that Plaintiff Does Not Suffer From a Listed Disability is Based on Substantial Evidence

Plaintiff argues that the ALJ's decision that Plaintiff does not suffer from a listed impairment on the grounds this conclusion is not supported by substantial evidence.  Specifically, Plaintiff alleges that, although his cardiac condition may not rise to the level of a listed impairment, his combined impairments, including renal insufficiency and pulmonary conditions, rise to the level of a listed impairment.  (Pl. at 10-11.)[3]  Plaintiff contends that the

---

[3] The designation "Pl." refers to Plaintiff's brief.

ALJ wholly failed to address these combined symptoms in his evaluation.  There are really two issues here.  The first is whether the ALJ's determination that Plaintiff's cardiac condition was not a listed impairment was based upon substantial evidence and properly considered Plaintiff's testimony regarding his condition.  The second is whether the ALJ erred by not evaluating whether Plaintiff's conditions in total matched a listed impairment.

### i. The ALJ Correctly Evaluated Plaintiff's Cardiac Condition

In step three, the ALJ concluded that although Plaintiff's impairment was severe it did not meet or equal any listed impairment in section 4.00 of Appendix 1, Subpart P to Regulations 4.  (Tr. at 21.)  The ALJ's determination was based upon Plaintiff's testimony and objective medical evidence.  Moreover, his decision, with specific references to the listings reviewed and the evidence and criteria evaluated, is more than sufficient to meet the Third Circuit's requirement that "the ALJ considered the appropriate factors in reaching" his conclusion and "that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhardt*, 364 F.3d at 505.  *See also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000).

A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by Plaintiff's statement of symptoms.  20 C.F.R. 404.1508; 20 C.F.R. 404.1520(a).  Moreover, "to show that [an] impairment matches a listing, it must meet all of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*

The ALJ held that although Plaintiff's cardiac impairment was severe, "there do not exist any medical findings which meet or equal in severity the clinical criteria of any [listed]

6

impairment." (Tr. at 21.) The decision outlines that the ALJ did not arrive at this conclusion arbitrarily but, rather, based his ruling on the medical record before him at the time. Indeed, the ALJ specified that "Particular attention was given to the listings in section 4.00 [addressing cardiovascular system impairments]. . . but the specified criteria required of each listing was not demonstrated by the available medical evidence." (*Id.*)  He goes on to conclude that "[a]lthough numerous objective tests were performed, none of the tests revealed findings consistent with the requirements." (*Id.*)

      Moreover, the ALJ wrote that, aside from not supporting a finding of a listed impairment, the objective medical evidence in the record revealed an improvement in Plaintiff's condition that could not support Plaintiff's subjective complaints. (*Id.* at 20-23.) This Court's review of the record, as outlined in the remainder of this Opinion, is entirely consistent with the ALJ's decision.

      **ii.**    **The ALJ's Failure to Group Plaintiff's Conditions to Find a Listed Impairment is Proper**

      Plaintiff contends that the ALJ failed to assess whether the combination of Plaintiff's symptoms might have equaled a listed impairment. (Pl. at 10-11.) Specifically, Plaintiff alleges that in addition to his cardiac condition, he was also diagnosed with renal insufficiency and pulmonary conditions. (*Id.* at 11.) However, Plaintiff does not cite to evidence of this renal insufficiency, nor is the diagnosis, history and treatment of such a disorder clear from the record. This lack of evidence about his renal insufficiency is significant, especially in light of Plaintiff's burden of production at stage three.

      Plaintiff's pulmonary condition, on the other hand, is part of the record and was, indeed, evaluated by the ALJ in his decision. (Tr. at 20.) Plaintiff is correct that he was originally

7

diagnosed with pulmonary symptoms. (*e.g.*, *id.* at 343-45.) However, subsequent tests show his lungs have returned to normal. Specifically, a chest x-ray taken on September 5, 2003 shows "the lungs are clear. The cardiomediastinal silhouette is unremarkable. There are no pleural abnormalities noted." (*Id.* at 280.) Therefore, it is clear from the ALJ's decision and the record that the ALJ considered Plaintiff's conditions in total in his evaluation, and that these conditions were not severe enough to equal the listed impairments.

> **B.     The Objective Medical Evidence Supports the ALJ's Step Four Assessment of Plaintiff's Residual Functional Capacity**

Substantial evidence also supports the ALJ's findings at step four that, although Plaintiff suffers from a "severe" impairment, he retains the residual functional capacity to perform a "full, wide and significant range of sedentary work," although not the specific work in which he was previously occupied. (*Id.* at 22-23.) Residual functional capacity measures the utmost that an individual can still do after considering the effects of physical and/or mental limitations that affect a person's ability to perform work-related tasks and is an evaluation based upon "all of the relevant medical and other evidence." 20 C.F.R. § 416.945; 20 C.F.R. § 404.1545.

At step, four Plaintiff has the burden of proving that his limitations prevent him from returning to his past relevant work. *See Burnett*, 220 F.3d at 118. Plaintiff claims that, as of August 24, 2005, he still suffers from chest pains, shortness of breath, has difficulty talking extensively, and cannot engage in physical activity. (Tr. at 422, 426, 428-29.) However, the medical evidence undermine his assertions, showing that Plaintiff's condition has steadily improved since March 25, 2003, when doctors initially diagnosed Plaintiff with mild

cardiomegaly and early congestive heart failure.  (*Id.* at 20, 194.)[4]

For example, as early as July 15, 2003, Plaintiff's condition had drastically improved and "the patient had no evidence of heart failure."  (*Id.* at 268.)  On July 31, a transthoracic echocardiogram revealed that Plaintiff's heart was operating with an ejection fraction in the low normal range; Plaintiff's August 18, 2003 echocardiogram and August 21, 2003 stress echocardiogram also show low normal results.  (*Id.* at 338, 271, 333.)  On September 9, 2003, doctors noted that Plaintiff was without symptoms of cardiac distress or chest pains and recommended that he modify his diet and develop a daily exercise routine.  (*Id.* at 327-28.)

Likewise, in October 2003, it was noted that "the severity of the symptoms and alleged effect are not completely consistent with the total medical and non-medical evidence."  (*Id.* at 290.)  At this same time, Plaintiff's exertional limits were evaluated, with the physician reporting that Plaintiff could "occasionally" lift 20 pounds, "frequently" lift 10 pounds, could "stand and/or walk" about 6 hours in an 8-hour workday and sit for the same amount of time, and had unlimited capacity to "push and/or pull (including operation of hand and/or foot controls)."  (*Id.* at 286.)  Finally, Plaintiff's January 27, 2004, echocardiography report shows low normal ejection fractions and no evidence of valvular disease. (*Id.* at 316.)  This Court's review of the record shows ample evidence to support the ALJ's statements in his decision that "[a]lthough claimant's ejection fraction in March of 2003 was 15%, by January of 2004 . . . [it] was noted to

---

[4] Plaintiff also stresses in his December 15, 2005 reply letter that there was a note on Plaintiff's March 29, 2003 medical records that he should be considered for a heart transplant.  (Pl. Reply at 1.)  However, this note is the only reference to a transplant and occurred during his initial heart crisis.  To the Court, the lack of any follow-up in the record, combined with Plaintiff's clear cardiac improvement, indicate that the March 29th note was merely an initial consideration disregarded as Plaintiff's condition improved.  Moreover, the ALJ was not required to note each and every piece of evidence that he considered in making his determination so long as there was substantial evidence to support his decision.

be 55% . . . [and] the claimant's most recent echocardiogram revealed no evidence of any significant valvular disease . . . ." (*Id.* at 21.)  The ALJ went on to note "[t]herefore I find the objective medical findings are contradictory to the claimants beliefs. (*Id.* at 21-22.)

Plaintiff also argues that his pain, in and of itself, should be considered disabling. (Pl. at 9.)  However, Plaintiff provides no objective evidence of debilitating pain.  Moreover, the objective medical evidence indicates his pain did not rise to such a level.  An ALJ is entitled to determine if subjective complaints of pain are consistent with both the objective medical evidence and other evidence on the record, including claimant's own statements.  20 C.F.R. §§ 404.1529 and 416.929(a); *Garcia v. Comm'r of Soc. Sec.*, No. 03-3775, 2004 WL 835822, at *3-4 (3d Cir. Apr. 19, 2004).

The ALJ found Plaintiff's assessment of pain was not fully credible. (Tr. at 21.)  The medical record here concurs, demonstrating, at most, intermittent pain.  For example, in March 2004, Plaintiff describes only an intermittent "tightness" in his chest that, by August 2004 has receded into a "slight" chest pain. (*Id.* at 298, 353.)  Likewise, Plaintiff's other complaints are likewise unsupported in the record. (*See, e.g. id.* at 319 (lethargy, dizziness).)

Finally, in addition to his physical complaints, Plaintiff further alleges that, because of his physical ailments, he has difficulty concentrating. (*Id.* at 428.)  However, hospital and test records consistently show that Plaintiff exhibits no signs of mental impairments. (*Id.* at 176, 214, 216.)  Thus, as no medical evidence indicates that Plaintiff's condition prevents him from performing sedentary work, Plaintiff has failed to meet his burden under step four.  Therefore, the ALJ correctly concluded that Plaintiff retains the residual functional capacity for sedentary work. (*Id.* at 22.)

Despite this determination, the ALJ went on to conclude that because "Mr. Knox lacks

the ability to perform more than a full range of sedentary work, I find that he is unable to perform the requirements of his past relevant work." (*Id.* at 22.) Therefore, the ALJ then moved onto the fifth, and final, step of analysis where he determined that Plaintiff can perform other work in the national economy.

### C. The ALJ's Determination that Plaintiff Could Perform Other Work in the National Economy was not Improper

At the fifth stage, the burden is on the Commissioner to prove that Plaintiff can perform other work in the national economy. 20 C.F.R. § 404.1520(g); *see also Burnett*, 220 F.3d at 118. Taking into account Plaintiff's age, education, and past work experience, the ALJ concluded that because Plaintiff at age 39 is considered to be a "younger individual" and possesses a high school education, he is able to perform available work in the national economy. *Id.*; 20 C.F.R. § 404.1563 and 416.963; (Tr. at 23.) In making this assessment, the ALJ properly relied on Rule 201.27 of the Medical-Vocational Guidelines. (Tr. at 23); *See generally Heckler v. Campbell*, 461 U.S. 458 (1983); *Allen v. Barnhardt*, 417 F.3d 396 (3d Cir. 2005).

### V. CONCLUSION

Based on the foregoing, the Court finds that ALJ's analysis was adequate and supported by substantial evidence. Therefore, the ALJ's decision is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**Dated**: October 23, 2006

                                         s/ William J. Martini

                                         **William J. Martini, U.S.D.J.**